UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE COOPER,

    Plaintiff,

-vs-                                    CASE NO.:  8:16-CV-03396-JSM-MAP

NAVIENT SOLUTIONS, LLC.,

    Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, CATHERINE COOPER, by and through undersigned counsel, and hereby files her Response to the Defendant's Motion for Partial Summary Judgment (Doc. 17) respectfully requesting that this Honorable Court deny this motion.  In support of such opposition, the Plaintiff states as follows:

    **I.**    **BACKGROUND**

On December 12, 2016, the Plaintiff filed a Complaint against Defendant, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §§227, *et seq.* ("**TCPA**") and the Florida Consumer Collection Practices Act. (Doc. 1).  Specifically, the Plaintiff alleges Defendant began calling her cellular phone in 2015, up to four (4) times per day.  These calls persisted after the Plaintiff verbally revoked consent to be contacted by cellular phone in January 2016.  The Defendant even continued calling Plaintiff after she sent the Defendant a letter on April 21, 2016 requesting that the calls stop.  The calls finally stopped in July 2016 when the Plaintiff made a third plea to Defendant to cease calls to her cellular phone.  It is believed that

the Defendant called the Plaintiff's cellular phone at least one hundred (100) times after the Plaintiff's first January 2016 revocation.

To date, only "paper" discovery has been completed. A deposition of the Defendant's corporate representative is set for May 17, 2017. The Defendant filed its Motion for Partial Summary Judgment ("**Motion**") on March 23, 2017. (Doc. 17).

## II. LEGAL STANDARD

The Plaintiff fundamentally agrees with the Defendant's statement of the legal standards applicable to summary judgment motions; in the interests of judicial economy, these standards will not be restated. However, as further explained below, the Defendant has failed to meet its initial factual burden and has failed to establish that it is entitled to judgment as a matter of law.

## III. ARGUMENT

### a. The TCPA Amendments Made By The Bipartisan Budget Act of 2015 Do Not Extinguish Plaintiff's Claims

In its Motion, the Defendant contends that following the November 2, 2015 enactment of the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 ("**Budget Act**"), calls made to collect governmentally insured or owed debts are no longer governed by the TCPA, at least until such time as the FCC regulations relating to the statutory changes made by the Budget Act become effective. This is flatly wrong. Contrary to the Defendant's apparent assertion that Section 301 of the Budget Act was meant to temporarily provide a complete exemption to the TCPA for calls "made solely to collect a debt owed to or guaranteed by the United States" until the implementation of FCC regulations pertaining to those changes, the statutory revisions made by the Budget Act were neither intended by Congress to be comprehensive nor self-executing. Instead, as the Defendant itself acknowledges, Congress "directed the Federal Communications Commission ("**FCC**") to 'prescribe regulations to **implement the amendments** made' by

Section 301 within nine months of enactment." (Doc. 17, p. 5) (*quoting* §301(b) of the Budget Act) (emphasis added). Therefore, any amendment to the TCPA was clearly meant to take effect **only after** the FCC had **implemented** these changes through regulations.

Notably, the FCC has issued binding authority that wholeheartedly concurs with the Plaintiff's interpretation of the Budget Act amendments to the TCPA. Specifically, the FCC explained in a regulatory order issued in August of 2016 that, as of the date of that order (which covers the entire relevant time period in this lawsuit), collectors of federal debt "owed to or guaranteed by the United States" were still prohibited from making calls without the prior express consent of the called party pursuant to the Budget Act amendment. The FCC stated the following regarding the delayed implementation of the regulations permitting such calls:

> As noted in the discussion above, two portions of our rules implicate the Paperwork Reduction Act (PRA). These portions involve the rules for the recording of a debtor's request to stop receiving autodialed, artificial-voice, and prerecorded-voice calls to collect a debt owed to or guaranteed by the United States, and rules for the conveyance of that stop-call request from one servicer or collector to another. Because these portions of our rules implicate the PRA, they will not become effective until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB).
>
> The remaining rules will not become effective until the rules requiring OMB approval become effective. While these remaining rules do not require OMB approval and could become effective immediately upon release of this Order, we determine that the consumer-protection rules regarding stop-call requests and conveyance of those requests are so integral to this regulatory scheme that the remaining rules should not become effective until the consumer-protection rules are in place. The rules that could become effective immediately permit a caller to make calls—they specify how many calls may be made, who may make the calls, when the calls can be made, and to which numbers the calls may be made, among other things. These rules give effect to one of the reasonable interpretations we have identified for Congress' passage of the Budget amendments: to make it easier for owners of debts owed to or guaranteed by the United States and their contractors to make calls to collect debts. But the second reasonable interpretation—to make it easier for consumers to obtain useful information about debt repayment—carries with it a consumer's prerogative to determine that the debtor does not want the information conveyed in the calls and

> to ask that the calls stop. The rules that give effect to this interpretation of Congress' intent are delayed by PRA requirements and OMB approval. **We determine that the regulatory scheme we implement today must include both the ability for callers to make calls and the right of debtors to ask that calls stop—and that both portions of the regulatory scheme become effective simultaneously. To do otherwise would be to allow callers to make calls but to leave debtors with no consumer protections until OMB approval is complete. We determine that both portions of the rules must become effective for the regulatory scheme to be effective.**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 16-99, ¶¶59–60 (August 11, 2016) ("**2016 FCC Order**"). As clearly seen from the above, the FCC has unambiguously concluded that federal debt collectors may not make calls without prior express consent pursuant to the Budget Act TCPA amendments until consumer-protective regulations issued by the FCC become effective. These regulatory rules promulgated by the FCC are binding on this Court. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (holding that, pursuant to the Hobbs Act, the U.S. Courts of Appeal are the exclusive venue for challenging FCC regulations).

The Defendant attempts to mitigate the obviously devastating effect of this regulatory ruling by suggesting it is inapplicable because the rules put forth by the 2016 FCC Order are "not yet effective" and therefore the Budget Act TCPA amendments must apply "as written." As a threshold matter, it is ironic that the Defendant contends that the Budget Act amendments "as written" favor its position, as the Budget Act made it clear that these changes were to be **implemented** by the FCC regulations. Furthermore, while it is indeed true that the regulations allowing calls without the prior express consent of federal debtors have not yet taken effect, that simply does not change the fact that the FCC ruling is **effective today** in that it has conclusively refuted the Defendant's absurd notion that the Budget Act was intended to effectively recreate the

"Wild West" in the area of federal debt collection by allowing collectors of such debt to completely ignore any TCPA restrictions until such time as regulations were promulgated. Rather, as was cogently explained in the 2016 FCC Order, federal debt collectors are fully subject to the TCPA until such time as the consumer-protective provisions of the FCC regulatory scheme take effect.

As a final note, the Defendant's reliance on a Department of Education press release, presumably as "authority" that Congress's intent in passing Section 301 of the Budget Act was to entirely release federal debt collectors from the strictures of the TCPA, is plainly misplaced. Indeed, the FCC expressly rejected very similar attributions of Congressional intent in its 2016 Order, stating the following:

> We find **no support** for the claim in one dissent that "[t]he Budget Act exemption was designed to protect federal agencies and their contractors from liability when they make calls without consent of the called party," or that the "intent of the law . . . was to enable lenders to use modern dialing equipment as part of their efforts to collect debt." No legislative history is cited for these assertions, nor does any appear to exist. Further, had Congress wanted callers to be wholly exempt from liability, or never to manually place calls, it would not have granted the Commission express authority to adopt rules limiting the number and duration of debt-collection robocalls.

*August 2016 FCC Order*, fn. 178.  As can be seen, not only is the Department of Education press release not particularly authoritative, the points that the Defendant cites it for are also directly refuted by a published regulatory order of the federal agency Congressionally vested with TCPA rule-making authority, the FCC.

> **b. The Defendant Has Failed To Establish The Calls At Issue In This Case Were "Made Solely To Collect A Debt Owed To Or Guaranteed By The United States"**

Even if one were to accept Defendant's position that Section 301 of the Budget Act created a period between its enactment and the implementation of the FCC's regulations where it

could face no liability under the TCPA, Defendant has failed to establish a prerequisite for such immunity, namely that its calls were made "solely to collect" a debt owed or guaranteed by the United States. In particular, the sole evidence relied upon by the Defendant, the Affidavit of its employee Carl Cannon (Doc. 17-1), is woefully inadequate in this regard. The closest the Affidavit comes to addressing the issue is its tepid statement that "in the course of servicing student loans, [the Defendant] may take actions to collect repayment of these loans." (Doc. 17-1, ¶3). The affidavit further asserts merely that the Defendant "attempted to contact" the Plaintiff "in its capacity as loan servicer" after the Plaintiff "became delinquent on her repayment obligations." These allegations are a far cry from establishing that each of the calls at issue in this case were made "solely" to collect the federally guaranteed debt. As such, the Defendant's summary judgment motion must fail.

## IV. CONCLUSION

Despite the Defendant's assertion it is temporarily exempt from the TCPA, it is clear that any amendment to the TCPA was meant to take effect after the FCC had implemented regulations. Nothing within the Budget Act or 2016 FCC Order justifies the Defendant's position. For the reasons stated herein, the Defendant's Motion for Partial Summary Judgment should be denied.

Respectfully,

s/Amy M. Ferrera, Esquire
Amy M. Ferrera, Esquire
Florida Bar No. 15313
Morgan & Morgan, Tampa, P.A.
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
amferrera@forthepeople.com
amoore2@forthepeople.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 13th day of April, 2017, a true and correct copy of the foregoing has been furnished via the CM/ECF system to: Drew P. O'Malley, Esquire, Akerman LLP, 401 E. Jackson Street, Suite 1700, Tampa, FL 33602 (drew.omalley@akerman.com; marykay.siegel@akerman.com); Adam G. Schwartz, Esq., Akerman LLP, 777 South Flagler Drive Suite 1100, West Tower, West Palm Beach, FL 33401(adam.schwartz@akerman.com; elisa.waites@akerman.com)

*s/Amy M. Ferrera, Esquire*
Amy M. Ferrera, Esquire
Florida Bar No. 15313